*Lee, Boss & McCanna. Francis I. McCanna*, for petitioner.

*Herbert A. Rice, Attorney General. W. Louis Frost*, of counsel, for respondent.

---

GILBERT JOHN BANNISTER *vs.* THE SOLDIERS' BONUS BOARD.

FEBRUARY 11, 1921.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1) Soldier's Bonus.*

Pub. Laws, 1832, Jan. 1920, "The Soldier's Bonus Act," so-called, does not grant the right to a bonus to a man who was inducted into the military service of the United States, but promptly rejected at a cantonment as unfit for military service, and who was never mustered into the service.

CERTIORARI. Heard and writ dismissed.

PER CURIAM. This is a petition for a writ of *certiorari*. The petition contains a prayer that the record of the decision

of The Soldiers' Bonus Board disallowing the petitioner's application for a bonus be quashed.

The essential allegations of the petition are that on the 13th day of March, 1918, the petitioner "was selected for immediate military service and inducted into the military service of the United States and ordered to report at the State House, Providence, on the 18th day of March, 1918, for military service;" that "in compliance with said order, the said petitioner duly presented himself and was thereupon sent to Camp at Fort Sam Houston, Texas, where he was under military orders and discipline;" "that on the 28th day of March, 1918, he the said petitioner was 'discharged from military service of the United States by reason of absence of teeth—insufficient for mastication;'" "that on the 16th day of April, 1919, he was paid the sum of SIXTY DOLLARS ($60.00), under an act of Congress approved February 24, 1919, which act is commonly known as the National Soldiers' Bonus Act;" "that under the provisions of Chaper 1832 of the Public Laws of the State of Rhode Island passed at the January Session 1920, and commonly known as The Soldiers' Bonus Act, he is entitled to the sum of ONE HUNDRED DOLLARS ($100), inasmuch as he was in the military service of the United States Army between the period of April 6, 1917 and November 11, 1918," and that said Board denied his application for a bonus.

The writ was issued. Citation was served on said Board and we have before us all records of said Board material for the consideration of this petition.

Chapter 1832 of the Public Laws, passed at the January Session, 1920, is entitled "An Act in recognition of the patriotic services of residents of the State who served in the Army and Navy of the United States during the war with Germany." Section 2 of said act enumerates certain classes of persons, who are entitled to receive a bonus from the State of Rhode Island, as follows: "Sec. 2. To each commissioned officer, enlisted man, field clerk, and army

and navy nurse, duly recognized as such by the war or navy department, who was mustered into the federal service and reported for active duty on or after April 6, 1917, and prior to November 11, 1918." . . . The petitioner contends that he was, within the provisions of said Section 2, an "enlisted man . . . duly recognized as such by the war or navy department, who was mustered into the federal service and reported for active duty on or after April 6, 1917, and prior to November 11, 1918."

The petitioner received the following order to respond to the draft: .

"ORDER OF INDUCTION INTO MILITARY SERVICE OF THE
UNITED STATES.

*The President of the United States,*
    *To Gilbert John Bannister*

Order Number 1299 Serial Number 696

Greeting: Having submitted yourself to a local board composed of your neighbors for the purpose of determining the place and time in which you can best serve the United States in the present emergency, you are hereby notified that you have now been selected for immediate military service.

You will, therefore, report to the local board named below at State House Smith St. entrance, at 3 p. m., on the eighteenth day of March, 1918, for military duty.

From and after the day and hour just named you will be a soldier in the military service of the United States.

GEO. H. WEBB
*Capt. Inf. O. R. C.*
*Director.*

For Member of Local Board for Dist. No. 2 City of Prov.
Report to Local Board for State of R. I.

Smith St. entrance State House
Date March 13, 1918              Providence, R. I."

In compliance with the above order the petitioner presented himself at the State House on the 18th day of March, 1918, at which time and place he was ordered to report at Fort Sam Houston, Texas.

The petitioner reported at said Fort Sam Houston, at which place on the 28th day of March, 1918, he received the following written discharge from the draft:

"Discharge from Draft

*To all whom it may concern:*

This is to Certify, That Gilbert J. Bannister is hereby DISCHARGED from the military service of the UNITED STATES by reason of absence of teeth—Insufficient for mastication.

Said Gilbert J. Bannister was inducted into the service from the jurisdiction of the *Local Board for Dis. No. 2, Providence, R. I., on the eighteenth day of March, 1918.

While this certificate discharges the person named herein from his present obligation to serve in the Army, it does not operate as a permanent bar to his subsequent entrance into the military service.   Under Section 5 of the Act of May 18, 1917, all registered persons remain subject to the draft unless exempted or excused as in that Act provided.   Therefore, this discharge does not excuse the holder from obedience to the process of Exemption Boards.

Given at Kelly Field Texas, this 28th day of March, 1918. By order of Lt. Col. Quackenbush

P. E. Van Nostrand

*Major A. S. S. C.   Adjutant.*

Note.—This form will be used for discharge of aliens and alien enemies and of men rejected on account of physical unfitness, dependency, etc."

The petitioner directs our attention to the following language contained in the order to report at the State House on March 18, 1918:   "From and after the day and hour just named you will be a soldier in the military service of the United States."

Was the petitioner an "enlisted man . . . duly recognized as such by the war or navy department, who was *mustered into the federal service* and reported for active duty?" We will first consider whether he "was mustered into the federal service" within the meaning of Section 2 of said Chapter 1832. Webster's International. Dictionary defines the word "muster" as follows: "To summon together; to enroll in service"; "To muster troops into service (mil.); to inspect and enter troops on .the muster roll of the army. . . ." It would seem that the word "muster" may be used accurately in describing the gathering together of men by military order at the various camps for the purpose of selecting and later training those who on examination appear to possess the necessary qualifications. But in our opinion a man has not been "mustered into the federal service" within the meaning of Section 2 of said Chapter 1832 until he has passed muster, or in other words, until he has been finally selected as a person fit for service, and actually enrolled in the service. It does not appear that the petitioner's name was ever placed on any muster roll of the army but on the contrary it does appear that on the tenth day following the day he reported at the State House he was rejected as unfit for service and discharged, not from the army but from the draft.

We assume that the petitioner was passed by the local draft board and from the above order directing him to present himself at the State House it would appear that he was inducted into the military service but it was the intention of the Selective Service Law that each person inducted into the military service should be finally examined and accepted or discharged upon his arrival at the mobilization camp. Section 166 of the Selective Service Regulations prescribed by the President under the authority vested in him by the terms of the Selective Service Law provides that all men inducted into the service shall at the mobilization camp be finally accepted or rejected within fifteen days after the date of the registrant's induction into service.

The petitioner was *inducted* into the military service but he was not *mustered* into the service.

To entitle the petitioner to a bonus from the State he must have been recognized by the war or navy department as an enlisted man; he must have been "mustered into the federal service" and he must have reported for active duty. The petitioner never had an opportunity to report for active duty. His experience with the draft never brought him to the stage where it was possible for the army or navy department to order him to attack the enemy or endure other perils of war. He was not called for active duty. His name was selected by lot as were the names of all other persons who were called by the draft and he, like the others, was ordered to report to a camp for final examination to determine his fitness for active duty. Had the petitioner successfully passed the physical examination he probably would have been enrolled as a member of the army and assigned to active duty in a training camp.

Section 2 of said chapter contains the following language: *Provided, further,* that no benefits shall accrue under this act because of the service of any person appointed to or inducted into the military or naval forces, who had not reported for duty on or prior to November 11, 1918, at the military cantonment or the naval station to which he was ordered." It was argued that this provision by inference indicates an intention that a bonus shall be paid to all persons who, between certain specified dates, were inducted into the military service and obeyed the order to report at a mobilization camp.

We frankly admit that the meaning of said proviso is not entirely free from doubt but it must be borne in mind that the proviso purports to exclude persons from the benefits of the act. Such a proviso should not be construed to include persons not otherwise included in the class of persons entitled to the benefits of the act unless such construction is clearly necessary to give effect to the intention of the General Assembly. Suppose we omit the words "for duty."

Does the language "reported for duty . . . at the military cantonment . . . to which he was ordered" mean the same as it would mean if it read, "reported . . . at the military cantonment . . . to which he was ordered?" What is the meaning of the phrase, "reported for duty?" Can it be said that the petitioner reported for duty within the meaning of the act when he reported for examination in order that it might be determined whether he would be accepted or rejected as a member of the army? Does not the phrase have reference to reporting for duty after the person has been mustered into the service? It is necessary to read the proviso in connection with the following language of Section 2: "to each . . . enlisted man . . . who was mustered into the federal service and reported for active duty on or after April 6, 1917, and prior to November 11, 1918." If we adopt the petitioner's construction the language next above quoted and the proviso together provide that a person who was mustered into the service and reported for active duty between said dates shall be entitled to a bonus, but a person who was inducted into the service but failed to report to the cantonment between said dates shall not be entitled to a bonus. Why is such a provision of exclusion necessary? The person who has failed to report to a cantonment after being inducted into the service has not been mustered into the service and is therefore not included among the class who, except for the proviso, would be entitled to a bonus. By giving the phrase "reported for duty" a construction which appears to us more reasonable, that is, that "reported for duty" means "reported for *active* duty," that is, reported for duty after being mustered into the service, the portions of Section 2 which we are now considering provide that enlisted men mustered into the service who reported for active duty between said dates shall be entitled to a bonus but no enlisted man shall receive a bonus who was not mustered into the service and who did not report for active duty between said dates even although he had been inducted into the service.

The petitioner suggests that had he refused to obey the
order to report to Camp Fort Sam Houston he would have
been subject to military discipline and punishment as a
deserter.   Section 2 (Part XII) of the Selective Service
Law provides that "All persons drafted into the service of
the United States . . . shall, from the date of said
draft or acceptance, be subject to the laws and regulations
governing the Regular Army,"   When the petitioner was
drafted, or in other words, inducted into the service he
became subject to military law and regulations.   Section 6
of the act of May 18, 1917, entitled, "An Act to authorize
the President to increase temporarily the Military Estab-
lishment of the United States," provides that any person
who fails or neglects to perform any duty required of him in
the execution of said act shall "if subject to military law
. . . be tried by court-martial and suffer such punish-
ment as a court-martial may direct."   It was the intention
of Congress, as expressed in the two acts last above cited,
that a person should be subject to the military law during
the time intervening between his induction into the service
and his final acceptance or rejection.   The purpose evi-
dently was to prevent the government, in the emergency,
from being hampered by the delays incident to procedure
in the civil courts.   A person, however, may be subject to
military law and regulations without being a member of the
army and it does not follow that a man must be a member
of the army to be the subject of court-martial.

It appeared in evidence received *de bene esse* that the peti-
tioner received a bonus from the federal government by virtue
of Sec. 1406, p. 368 Fed. Stat. Ann.—1919 Supp., which
provides in part as follows:   "that all persons serving in
the military or naval forces of the United States during the
present war who have, since April 6, 1917, resigned or been
discharged under honorable conditions (or, in the case of
reservists, been placed on inactive duty) . . ."   "This
amount shall not be paid (1) to any person who though
appointed or inducted into the military or naval forces on
or prior to November 11, 1918, had not reported for duty

at his station on or prior to such date;  . . ."   Whether this evidence was admissible in *certiorari* proceedings we do not decide.   It is not our duty to construe this federal statute.   We are concerned only with arriving at the intention of the Rhode Island General Assembly as expressed in said Chapter 1832.   It was evidently the opinion of the person administering the provisions of said federal statute that the petitioner had served "in the military or naval forces" and had "been discharged under honorable conditions."   Of course, the petitioner was legally bound to obey the federal statute enacted for the purpose of assisting in procuring an adequate army and navy.   He had been inducted into military service and in reporting at Fort Sam Houston he was obeying military orders.   While obeying military orders authorized by federal statute he was assisting the federal government in its endeavor to obtain an adequate army and navy and to that extent was engaged in the federal service.   It will be observed, however, that the provisions of said federal bonus act are vastly different from the provisions of said Chapter 1832.   Said federal bonus act contains no provision that the applicant must have been "mustered into the federal service" to entitle such person to a bonus.   The purpose of said Chapter 1832, as indicated by the title and also the opening words of Section 2, was to grant a gratuity to certain classes of persons "in recognition of the patriotic services of residents of the state who served in the army and navy of the United States during the war with Germany."   The petitioner did not serve in either the army or the navy.

In our opinion said act does not indicate an intention of the General Assembly to grant a bonus to a man who was inducted into the military service but promptly rejected at a cantonment as unfit for military service and who was never mustered into the service.

The writ of *certiorari* is dismissed.

*Pettine & De Pasquale,* for petitioner.

*Herbert A. Rice, Attorney General,* for respondent.