BANDY, Appellant, v. MICKELSON et al., Respondents

(44 N. W.2d 341)

(File No. 9194. Opinion filed October 16, 1950)

**Bandy & Zeitner,** Armour, for Plaintiff and Appellant.

**Sigurd Anderson,** Atty. Gen., **E. D. Barron** and **Phil W. Saunders,** Asst. Attys. Gen., for Defendants and Respondents.

GEO. A. RICE, Circuit Judge. This is an appeal from an order of the Circuit Court, dismissing the petition of

James R. Bandy, Jr., seeking a premptory writ of mandamus, requiring George T. Mickelson and others, constituting the South Dakota Veterans Bonus Board, to credit petitioner for the time served by him as a cadet in the United States Military Academy at West Point, as military service, and to pay him a bonus therefor.

The defendants, by their motion to dismiss, allege that the petition does not state facts sufficient to justify the relief asked. It is alleged that the Board has considered plaintiff's claim, which was allowed in the amount of $255.50, for time served in the Army subsequent to his graduation from the Academy and prior to September 2, 1945, and that a warrant therefor was issued to him which he refused to accept. It is also alleged that the Board acted within its discretion and authority and that its action is final.

The 1947 legislature by Chapter 249 of its acts submitted to the voters of this state a constitutional amendment, providing: "The Legislature shall be authorized to provide by law for compensating and paying a bonus in money to veterans and to dependents of deceased veterans, who were legal residents of the State of South Dakota for a period of not less than six months immediately preceding entry into the Armed Forces of the United States and who have served for ninety or more days in the Armed Forces of the United States between the period beginning December 7, 1941 and ending September 2, 1945 and who are still in the Armed Forces or were discharged therefrom under conditions other than dishonorable. * * *" "Armed Forces" is defined as including, among other services, the United States Army. This amendment was adopted at the general election in 1948, Const. art. 13, § 19. Pursuant thereto the 1949 legislature enacted Chapter 158 of the session laws of that year. This created the Veterans Bonus Board, consisting of the following officers of this state—the Governor, Treasurer, Attorney General, Auditor and Director of the Veterans Department. It provided, in accordance with the constitutional amendment, that the bonus should be paid to those serving in the "armed forces" during the time limited therein. Section 6 of the act provides that the Board shall adopt such

rules and regulations as it may deem proper and necessary to carry out the provisions of the act. It is also provided: "Decisions of the Veterans' Bonus Board as to the payment or nonpayment of bonus, or eligibility therefor, shall in all things be final." Sec. 20.

■■ Defendants urge that mandamus cannot issue for the reason that it is discretionary and where it is reasonable to doubt the necessity or propriety of issuing the writ it should be denied. This is a generality accepted by this court. For example, in Bailey v. Lawrence, 2 S.D. 533, 51 N.W.331, 332, it is said: "To entitle a party to a writ of mandamus, he must have a clear legal right to have a service performed by the party to whom he seeks to have the writ directed." See also State ex rel. Cook v. Richards, 61 S.D. 28, 245 N.W. 901; Wood v. Waggoner, 67 S.D. 365, 293 N.W. 188; and Midwest Oil Co. v. Youngquist, 69 S.D. 461, 11 N.W.2d 662.

In considering the question of whether the Board's decision involved discretion, we should first look to the source of its authority. This is the constitutional amendment heretofore quoted, wherein the payment is authorized to those who "served in the armed forces." The use of this identical language by the legislature is indicative of an intention that payment should not be denied to any member of that class. It is further a question of gravest doubt as to whether the legislature could grant power to the Board which, if exercised, would deny or limit payment to such class. An attempt to do so would be an attempt to grant to an administrative board a judicial function, not only to ascertain the legislative intention but that of the voters as expressed in the constitutional amendment.

■■ Reverting to the provision making the decision of the Board final, our construction thereof is that it was the legislative intent to make the board's action final upon all questions which, by settled public administrative law, are accepted by the courts as final. See 42 Am.Jur. 557, Sec. 187. Defining and interpreting the law is a judicial function and the legislative branch may not limit or restrict the power granted to the courts by the constitution. The follow-

ing form Judge Tripp's opinion in the early case of Champion v. Board of County Commissioners of Minnehaha County, 5 Dak. 416, 41 N.W. 739, 742, is in point: "The legislature can create no other court; and can confer judicial power, strictly such,—that which 'deprives of life, liberty, or property,'—upon no other tribunal. Quasi judicial powers involving judgment and discretion are often, and must necessarily be, exercised by administrative and executive bodies and officers. A judicial power, as such, can be exercised only by the courts. The three great departments of the government are intended to be, and must be, separate and distinct. The legislature has no power to confer a strictly executive and administrative or legislative power upon the judiciary, and whenever it has sought to do so the courts have declared it void." The foregoing was also quoted by the court in Hoyt v. Hughes County, 32 S.D. 117, 142 N.W. 471. The antiquity of the rule may be learned from Justice Marshall's opinion in Marbury v. Madison, 1 Cranch 137, 171, 2 L.Ed. 60, cited by Judge Tripp. The opinion is of particular interest for the reason that Marshall, in referring to the controversy then in the federal courts, involving the right to pensions to disabled veterans granted by congress in 1794, pointed out that the determination of who were disabled veterans entitled to pensions was not a judicial function, but administrative, and that an attempt to confer such power on the judiciary was unconstitutional. On the other hand, it is as clearly pointed out that if the right existed either by admission or by proof by undisputed testimony that no question of discretion existed and that mandamus would lie.

Mandamus has been frequently used in seeking a review of the decisions of administrative boards, involving firemen's pensions and the like. State ex rel. Herman v. City of Grand Island, 145 Neb. 150, 15 N.W.2d 341; Kittredge v. Boyd et al., 136 Kan. 691, 18 P.2d 563, 93 A.L.R. 574; Meyer v. Board of Trustees of Firemen's Pension & Relief Fund for City of New Orleans, 199 La. 633, 6 So.2d 713; Austin v. Board of Civil Service Commissioners, 50 Cal.App. 2d 436, 123 P.2d 119; Jacquish v. Deming, 40 S.D. 265, 167 N.W. 157; Pierce v. Green, 229 Iowa 22, 294 N.W. 237, 131

A.L.R. 335; Chicago M. St. P. & R. R. Co. v. Board of Railroad Commissioners, 64 S.D. 297, 266 N.W. 660.

In Lindemuth v. Philipp, Governor, et al., 174 Wis. 76, 182 N.W. 345, the Wisconsin court affirmed on appeal the issuance of mandamus to compel payment of a bonus by a Service Recognition Board. The case hinged upon the definition of residence, as used in the statute.

The North Dakota case of State ex rel., Howieson v. Fraser, 53 N.D. 909, 208 N.W. 397, involving the payment of a state bonus, at least in its reasoning is admittedly contra. However, in Bannister v. Soldiers' Bonus Board, 43 R.I. 346, 112 A. 422, 13 A.L.R. 589, and in Re Haugen, 151 Minn. 433, 186 N.W. 862, the action of administrative officers in denying payment of state bonus was reviewed upon certiorari. The use of mandamus in such cases is discussed in the A.L.R. note, page 604, following the Bannister case.

If any distinction could be made between liabilities in the nature of gratuities created by the state against itself and others, the question has been determined adversely to defendant by the decision in Wood v. Waggoner, 67 S.D. 365, 293 N.W. 188.

■ The Board's decision, in the proper meaning of the term, did not involve discretion. There was no issue of fact. The question was one of statutory interpretation. To permit the Board to set up its own standards or to pass on claims without standards, in the name of discretion, would be equivalent to saying it was not bound by law or, at the least, that it was the final judge as to the law.

■ ■ The action of the Board in denying petitioner's claim is, therefore, properly before us upon the statutory interpretation determinative of his rights, viz., did he, while a West Point cadet, serve in the armed forces of the United States. To the lay mind the cadets may not have been thought of as in military service. However, the question should not be settled by the popular conception, but rather by the law of the United States controlling them while enrolled at the Academy. As said in Christopherson v. Reeves, 44 S.D. 634, 184 N.W. 1015, 1017, "It is elementary that in construing a constitutional or statutory provision the words

must be taken, * * * in their usual and ordinary sense, unless there is a constitutional or statutory definition of the word, * * *." The following are from Chapter 1 of 10 U.S.C. A. §§ 2, 4:

Sec. 2. "Composition of Army of United States. The Army of the United States shall consist of the Regular Army * * *."

Sec. 4. "Composition of Regular Army. The Regular Army of the United States shall consist of * * * the professors and cadets of the United States Military Academy * * *."

The following are from Chapter 27 of 10 U.S.C.A. § 1102:

Sec. 1102. "Cadets shall be subject at all times to do duty in such places and on such service as the President may direct."

Sec. 1105. "* * * The corps [of cadets] shall be taught and trained in all the duties of a private soldier, noncommissioned officer, and officer, shall be encamped at least three months in each year, and shall be taught and trained in all the duties incident to a regular camp."

It is contended that the Board is not bound by these Federal Statutes; that it was the legislative intent that the bonus would constitute compensation for the sacrifice and disruption of normal civilian life accompanying full time military service. We appreciate that appointments to West Point are highly regarded and eagerly sought and that the cadet receives an education equal to that in any American college at government expense. However, we do not discern in the statute any authority or discretion to weigh or measure "service in the armed forces." Concededly, many who served did not make sacrifices, but lived better and drew more pay than in civilian life, while others endured hardships and dangers which it would be impossible to compensate. The heroes of Guadalcanal or the Battle of the Bulge, except for the 25 cents per day differential for foreign service, are equal, in the language of the act, to those whose entire service was of the swivel chair variety.

It is well known that several thousand received a medical or dental education in our colleges, while serving in the armed services. Illustrations could be multiplied, but it should be clear that the Board is limited by the statute to the determination of the one issue of service in the armed forces. In the absence of other criteria, we must accept the definition thereof as contained in the federal statutes.. It has been pointed out that these same statutes for certain purposes distinguish service at the army and naval academies from other service. For example, that such service shall not be counted in determining the length of service of an officer, and that mustering out pay shall not be paid for such service. These emphasize the fact of service and that our own legislature, with these precedents available, made no exceptions in the use of the term, "service in the armed forces."

A consideration of Chapter 363 of the Session Laws of 1921, granting a bonus to World War I veterans, apparently followed in the 1949 act, strengthens our interpretation of the present law. Section 18 of the earlier act contains the following: "No compensation shall be payable to persons serving in Student's Army Training Camps, who in addition to Military Training received general educational instruction." By not including a clause of like import in the 1949 law it is fair to conclude that the legislatiure did not intend to exclude from its benefits those receiving educational training while serving in the armed forces.

The judgment of the trial court is reversed, with instructions to issue the writ of mandamus as asked in plaintiff's petition.

All the Judges concur.

GEO. A. RICE, Circuit Judge, sitting for ROBERTS, J., disqualified.