James J. Lamb, Appellee, v. Herman Kroeger et al., Appellants.

No. 46214.

█ 

MARCH 9, 1943.

REHEARING DENIED JUNE 18, 1943.

 █—█ 

John M. Rankin, Attorney General, William F. McFarlin, Assistant Attorney General, and Clark O. Filseth, County Attorney, for appellants.

Lane & Waterman, of Davenport, for appellee.

MULRONEY, J.— The sole question to be determined is whether plaintiff is an honorably discharged soldier of the war with Germany, and, as such, entitled to the tax exemption provided in section 6946, Code of Iowa, 1939. This section provides for a tax exemption upon "the property, not to exceed five hundred dollars in actual value, of any honorably discharged soldier, sailor, marine, or nurse of the war with Germany."

The stipulation of facts relates the following story: Appellee, a resident of Davenport, Iowa, registered under the Selective Draft Act of 1917, and on November 9, 1918, he received, by United States mail from Local Board No. 1 in Davenport, a notice that he had been selected for immediate military service. The notice stated that he should report at 9 a. m. on November 11, 1918, at draft headquarters in Davenport, and it further stated: "From and after the day and hour just named, you will be a soldier in the military service of the United States." The notice was signed by a board member of Local Draft Board No. 1 in Davenport.

732

Appellee reported to draft headquarters at the hour named on the morning of November 11th, and after the roll of draftees was called, one of the draft-board members read to all the draftees an order of the Provost Marshal General to the effect that they were "now in the military service of the United States." Appellee was appointed leader of the contingent, by a board member, and the entire contingent went to the Hotel Dempsey, in Davenport, for lunch before entraining for Camp Dodge in Des Moines. While at lunch, a board member arrived and told them that they would not entrain for Camp Dodge because "calls had been cancelled." He also stated that the members of the contingent were dismissed and that written notice of the cancellation would be mailed to each of them.

On November 15, 1918, appellee received, by mail from Draft Board No. 1 in Davenport, a letter stating that by order of the Provost Marshal General all outstanding "calls for the army" had been canceled and that "all registrants who were inducted but not entrained under such calls are discharged from the army." The letter further stated "that such cancellation in cases of registrants who were inducted has the effect of an honorable discharge from the army."

Thereafter, on or about January 26, 1919, appellee received, by mail from Camp Dodge in Des Moines, a "DISCHARGE FROM DRAFT." This discharge certifies that appellee "is hereby DISCHARGED from the military service of the UNITED STATES by order of the President dated November 11, 1918." It also states: "While this certificate discharges the person named herein from his present obligation to serve in the Army, it does not operate as a permanent bar to his subsequent entrance into the military service."

On the same date appellee received a voucher from the government for $4 for "final pay."

It was stipulated that appellee had received the exemption from taxation from 1929 to 1939, but that the Attorney General of Iowa had, on February 2, 1922, ruled that the holder of such a discharge from draft was not entitled to the exemption under section 6946, Code of Iowa, 1939.

We must here interpret the meaning of the words "honorably discharged soldier * * * of the war with Germany"

found in section 6946, Code of Iowa, 1939. This law is a tax-exemption law. As such it must be strictly construed to the end that no property shall be exempt except that which clearly and fairly falls within the express terms of the law. Trustees of Griswold College v. State of Iowa, 46 Iowa 275, 26 Am. Rep. 138. The Iowa rule is probably best stated in Readlyn Hospital v. Hoth, 223 Iowa 341, 344, 272 N. W. 90, 91:

"Statutes passed for the purpose of exempting property from taxation must be strictly construed, and if there is any doubt upon the question it must be resolved against the exemption and in favor of taxation. The exemption is not to be made by judicial construction, but anyone claiming exemption from taxation under a statute must show clearly that the property is exempt within the terms of the constitution and the statute."

The above rule announced in the Readlyn Hospital case was quoted with approval in Board of Directors v. Board of Supervisors, 228 Iowa 544, 293 N. W. 38.

What did the legislature mean by the words "honorably discharged soldier * * * of the war with Germany"? The word "soldier" is defined by Webster's New International Dictionary, 2d Ed., as:

"One who is engaged in military service as an officer or a private; one who serves in an army; one of an organized body of combatants."

Lamb, under this record, was neither an officer nor a private in the military service. Did he serve in the Army? Was he one of an organized body of combatants? We think not. The Army had not accepted him as yet. He had passed no army physical examination. The stipulation of facts contains the following significant language:

"It is further stipulated and agreed that all draftees selected by local Boards, including the plaintiff, were subject, upon arrival at a mobilization center, to further physical examination before acceptance or rejection by the United States Army. All draftees so examined and accepted were then to be given the Oath of Enlistment in the United States Army; that plaintiff and

other members of the contingent never entrained for Camp Dodge, Iowa, which was the proper mobilization center in the instant case and therefore plaintiff was not subjected to further physical examination, was not given the Oath of Enlistment in the United States Army and was not accepted or rejected by the United States Army at said mobilization center.''

True, certain notices he had received from his draft board had stated that he was a soldier and that after receipt of the notice he would be in the military service at a certain hour on a certain date, and the discharge from draft he received expressly stated that he was discharged ''from the military service of the United States.'' These notices and instruments are not controlling. We are here concerned with what the Iowa Legislature, not draft-law administrators, or United States Government officials, meant by the term ''honorably discharged soldier * * * of the war with Germany.''

The case of Zearing v. Johnson, 10 Cal. App. 2d 654, 657, 52 P. 2d 1019, 1020, is in point. In this case the California court construed a law giving a tax exemption to ''every resident * * * who has served in the army * * * of the United States in time of war, and received an honorable discharge therefrom * * *.'' The applicant, who was then a resident of Indiana, did go from his local draft board to Camp Dodge, but was there rejected because of physical unfitness. He was given a discharge exactly like the ''Discharge From Draft'' Lamb received. In holding the applicant was not entitled to the tax exemption, the California Supreme Court stated:

''It appears from the face of the discharge from draft and the allegations of the petition that petitioner was merely subject to military law and had an obligation to serve in the army from which he was relieved for proper reasons. It does not appear that he ever served in the army *or was ever a part of the army.* [Italics supplied.] A person may be subject to military law without being a member of the armed forces of the United States. (Bannister v. Soldiers' Bonus Board, 43 R. I. 346, [112 Atl. 422, 13 A. L. R. 589].) An honorable discharge is a formal and final judgment based by the government upon the military record of a member of its armed forces, and a declaration that such per-

son had left the service in a status of honor. (United States v. Kelly, 15 Wall. 34, [21 L. Ed. 106].) There is no doubt that appellant was released from *the obligation to perform active duty under* honorable conditions, but in our opinion, this is not a release from active duty. The attorney-general of this state has ruled that a discharge from draft, such as the one in the instant case, is not an honorable discharge within the meaning of the constitutional provision (A.G.O. 7656, July 31, 1931), and we are of the same opinion. We concur in that part of the opinion of the attorney-general referred to, in which the attorney-general states: 'From all of the foregoing it would seem to clearly appear that the physical examination, selecting, etc., by the Local Board, were tentative, conditional or preliminary in character, and only ripened into an actual service following physical examination and acceptance by the military authorities after arrival at mobilization camp. If not so accepted a "discharge from draft" was given, signifying the *refusal* of the military authorities to accept the individual named therein for military service.' "

It is argued that this case is not authority because of the difference in the statutes. The California statute uses the words "who has served in the army." The Iowa statute gives the exemption to "soldiers * * * of the war with Germany." We see no material difference. Can it be argued that the Iowa Legislature meant to give this exemption to anyone who did not *serve* in the army? The ordinary and accepted meaning of the word "soldier" is one who serves in an army. With this definition the two statutes have the same meaning and the case is in point.

But we are not left to conjecture about what the Iowa Legislature meant. Section 5173, Code of Iowa, 1939, providing for the recording of discharges of soldiers, provides for recording without fee when "at the time of his entrance into the *service* of the United States" he was a resident, etc. (Italics ours.) This statute was amended by chapter 242, section 1, Acts of the Forty-ninth General Assembly, but again the statute speaks of "the final discharge or service certificate of any *person who served* in the armed forces of the United States * * *." (Italics ours.)

The fact that a person was subject to military law during the time that intervened between his call to report for military service and his final acceptance or rejection does not make that person a soldier within the meaning of this tax-exemption act. The purpose of this law is to grant a gift of tax exemption in recognition of patriotic service rendered by Iowa citizens. We cannot believe the legislature meant by the phrase "soldier of the war with Germany," one who merely received from his draft board a communication that his draft number had been reached and after a certain hour on a certain date he would be "a soldier in the military forces of the United States." Nor do we believe the legislature intended that those who were rejected by the United States Army upon arrival at the mobilization center were to be given the exemption as "soldiers of the war with Germany." Yet, such would be the logical result of a conclusion that appellee was such a "soldier of the war with Germany." As pointed out in the Zearing case, an inductee, rejected for physical unfitness when he reached the mobilization center, received the same discharge from draft that appellee received.

A literal construction of this statute would give the exemption to an honorably discharged soldier of the Canadian, French, English, or Japanese Army, or even the German Army. Such a construction would be an absurdity. This court is not bound by a literal construction. See State v. Gish, 168 Iowa 70, 78, 150 N. W. 37, 39, Ann. Cas. 1917B, 135, where the rule is stated:

"The purpose, of course, of statutory construction is to ascertain and declare legislative intent as expressed in the statute. It has often been held, however, that where a literal construction of a statute leads to absurdity or to manifest injustice or oppression, the court will not be bound by literal terms, but will seek a construction consistent with a sense of justice, if possible, and will presume such to have been the intent of the legislature."

This statute should receive a sensible construction. As we have stated, the legislative intent to reward by tax exemption for patriotic service is clear. A legislative intent not to reward for a call to service that was canceled before the service commenced is just as clear.

The case of Bannister v. Soldiers' Bonus Board, 43 R. I. 346, 351, 112 A. 422, 424, 13 A. L. R. 589, referred to in the quotation from the Zearing opinion, is a case where the applicant for a soldier's bonus held a similar "Discharge From Draft." The Rhode Island statute gave a bonus for each enlisted man "who was mustered into the federal service and reported for active duty." The statute is quite different, but, in holding the applicant was not entitled to the bonus, the court stated:

"His name was selected by lot as were the names of all other persons who were called by the draft and he, like the others, was ordered to report to a camp for final examination to determine his fitness for active duty. Had the petitioner successfully passed the physical examination he probably would have been enrolled as a member of the army and assigned to active duty in a training camp. * * *

"When the petitioner was drafted, or in other words, inducted into the service he became subject to military law and regulations. Section 6 of the act of May 18, 1917 [40 Stat. at L. chapter 15], entitled, 'An Act To authorize the President to increase temporarily the Military Establishment of the United States,' provides that any person who fails or neglects to perform any duty required of him in the execution of said act shall 'if subject to military law * * * be tried by court-martial and suffer such punishment as a court-martial may direct.' *It was the intention of Congress, as expressed in the two acts last above cited, that a person should be subject to the military law during the time intervening between his induction into the service and his final acceptance or rejection.* The purpose evidently was to prevent the government, in the emergency, from being hampered by the delays incident to procedure in the civil courts. *A person, however, may be subject to military law and regulations without being a member of the army and it does not follow that a man must be a member of the army to be the subject of court-martial.*" (Italics ours.)

The case of Dunn v. Commissioner of Civil Service, 281 Mass. 376, 380, 183 N. E. 889, 891, 87 A. L. R. 998, illustrates the point that we must find out what our legislature had in mind when it

738

granted this exemption. There the Massachusetts Supreme Court stated:

"We think the Legislature had in mind participation in situations where army, navy and marine corps were engaged in performing the objects for which they were called into being and the individual members were acting their several parts. * * * The beneficiary has been the man who 'served,' not merely one who has been 'mustered in' or 'inducted.'"

The case of Hurley v. Crawley, 60 App. D. C. 245, 50 F. 2d 1010, much relied upon by counsel for appellee, can be distinguished. There the court's decision seemed to be partly based upon the fact that the drafted man performed military duties for approximately nine weeks. There, too, the statute under consideration was a civil-service-preference statute that had to be liberally construed to effect the purpose of the law.

II. The stipulation in this case sets forth the opinion of the Attorney General of Iowa, dated February 2, 1922 (1922 A.G.O. 194). The question asked the attorney general was whether the holder of a similar discharge from draft was entitled to the exemption. The attorney general ruled that the holder of such a discharge from draft was "never actually in the service of the United States as a soldier." In the course of his opinion he stated that the intent of the legislature was to grant exemption "to those who were actually in the service and who had secured an honorable discharge."

Here is a ruling, made within a year after the effective date of the tax-exemption law, by the attorney general, who is charged with the duty of rendering such opinions. We do not think it controlling, but it is excellent authority bearing upon the question of legislative intent. Courts have always given great weight to the construction of statutes of this kind by the executive departments of the state. In the case of John Hancock Mut. L. Ins. Co. v. Lookingbill, 218 Iowa 373, 387, 253 N. W. 604, 611, we stated:

"The legislature is presumed to know the construction of its statutes by the executive departments of the state, and if the legislature of this state was dissatisfied with the construction which has been placed upon them by the duly elected officials in

the past years, the legislature could very easily remedy this situation, as it has the power to pass such legislation, and the only conclusion we can come to is that the legislature must have been satisfied with the construction placed upon the act by the secretary of state."

In view of the evident purpose of this law, and the early ruling of the attorney general against the exemption in a similar case, we feel there is a serious doubt upon the question whether the appellee is an honorably discharged soldier of the war with Germany within the meaning of section 6946, Code of Iowa, 1939. When such a doubt exists upon the application of this tax-exemption statute, our ruling must be against the exemption.

The judgment of the trial court is therefore reversed.—Reversed.

GARFIELD, C. J., and BLISS, MILLER, WENNERSTRUM, OLIVER, and MANTZ, JJ., concur.

SMITH, J., dissents.

SMITH, J. (dissenting)—I am unable to concur. The majority opinion correctly states, as the sole question to be determined, Was appellee an honorably discharged soldier of the war with Germany?—but proceeds to answer it in the negative. I would affirm the decision of the trial court and answer the question in the affirmative.

The majority opinion starts with Webster's definition of the word "soldier." I prefer to take the definition of the United States Government, made in the very act of administering the selective-service act.

The language of the exemption statute should be presumed to have been used in the light of the selective-service law as administered rather than in the light of a general dictionary definition.

The draft officials, from the President of the United States down to the local draft board, assured appellee that he was "in the army."

On November 9th, appellee was ordered (by written notice) to report for *"induction into military service"* and the notice

stated that "from and after the * * * hour just named [hour of induction] *you will be a soldier in the military service of* the United States." (Italics supplied.) It is true, as the majority opinion points out, that the notice was signed by a member of the local draft board, but it was denominated as an "Order of Induction into Military Service of the United States" and purported to be done in the name of "The President of the United States." Is it for us to place against this express language the dead definition of a lexicographer? I think not.

On November 11th he was "inducted into the military service" and again was told: *"You are now in the military service of the United States."* (Italics supplied.) This instruction was given expressly "By Command of the Provost Marshal General."

That day Germany suddenly admitted the futility of further fighting. The armistice was signed.

General Crowder, the Provost Marshal General, promulgated the President's order:

"The President further directs that all registrants *who are already inducted into the Army* * * * *but who have not been actually entrained for a mobilization camp, shall be, and they are hereby, discharged from the Army.*" (Italics supplied.)

On or about November 14th appellee received from his local board a written communication which was issued "By order of the Provost Marshal General acting under the instruction of the President of the United States," and which contained this language:

"Accordingly all registrants who received notices to appear for induction under such calls, *or who appeared and were inducted but not entrained,* are notified that the undersigned Boards have cancelled all such notices and orders of induction, *and that such cancellation in cases of registrants who were inducted has the effect of an honorable discharge from the army.*" (Italics supplied.)

On or about January 26, 1919, appellee received by mail his so-called "Discharge from Draft," which stated that he was "discharged from the military service of the United States by order of the President dated November 11, 1918."

These are the salient facts upon which this court is required to say whether appellee is "an honorably discharged soldier of the war with Germany" within the meaning of the tax-exemption statute. Appellee received final pay for his military service. He was allowed the tax exemption for the years 1929 to 1939 both inclusive.

It has seemed to me the *express language* of these various documents and orders completely answers the contention of the appellant board of supervisors. If appellee was "in the army" or "in the military service" for any purpose he was a "soldier," even within the dictionary definition cited in the majority opinion. That opinion dogmatically asserts he "was neither an officer nor a private." The President, the Provost Marshal General, and the draft board all thought differently. The whole procedure indicates the intention to make the time of induction the commencement of military service.

The fact that appellee's term of service was short makes no difference in principle. It cannot be argued merely because he never went into action that he never "served." The word has no such narrow meaning. "They also serve who only stand and wait." Appellee was available for such duty as would be assigned him. That the war ended before he reached the mobilization camp did not affect his status in the opinion of his government. I think it should make no difference in ours. The entrainment for mobilization, the taking of further physical tests, and the oath of enlistment were all acts which he, as a soldier, would have had to perform at the appropriate time, just as he would have had to perform many other acts and duties as a soldier if the armistice had not intervened. He "served" just as surely as did thousands of others who took the oath of enlistment but never left the mobilization center.

We believe the decision of the United States Court of Appeals of the District of Columbia in Hurley v. Crawley, 60 App. D. C. 245, 50 F. 2d 1010, should be followed here. That was a mandamus proceeding to obtain preferential status as an "honorably discharged soldier" under civil-service rules. Petitioner's status in the draft was exactly the same as that of appellee here. His service terminated before he was ever "accepted." Apparently, he never reached the stage of taking the oath of

enlistment. The court in that case called attention to the very documents and orders which I have just described and construed them as I have tried to construe them. It was there held he was an "honorably discharged soldier."

The majority opinion dismisses the Hurley v. Crawley case with two observations: First, that the opinion in that case "seemed to be partly based upon the fact that the drafted man performed military duties for approximately nine weeks"; and second, that the statute there under consideration was a civil-service-preference and not a tax-exemption statute.

The answer to the first suggestion is found in the facts stated in the opinion itself. The soldier reached the mobilization camp September 3d. The next day he was admitted to the base hospital, from which he was discharged September 26th. He went back to the hospital October 3d and remained until November 9th, when he was found physically disqualified for service. During the brief interval between September 26th and October 3d his duties included moving of hospital cots and similar acts. *He never took the oath, never passed the final examination, and was never "accepted" by the army,* under the opinion of the majority here. Yet the United States Court of Appeals held he was an "honorably discharged soldier." His status was exactly the same as that of appellee.

But it is suggested the statute in question in that case was one subject to "liberal" construction and that this is a "tax exemption" statute and must be "strictly" construed. I am not sure that this distinction is anything more than theoretical. Both statutes were intended as furnishing some reward for patriotic service. The *quantity* of service is not attempted to be measured by either. I can see no logical reason for a *strict* construction when the reward offered is exemption from tax and a *liberal* construction when it is a civil-service preference or a soldier's bonus.

It will be found that the "strict construction" theory as applied to tax exemption grows more logically out of cases where the *property* is either publicly owned or is supposed to be serving some beneficent purpose—religious, educational, or charitable—rather than in cases where the *taxpayer* is being rewarded for services already rendered. In one, the exemption is to pro-

mote the purpose for which the property is used; in the other, it is a personal gratuity or reward to the owner. I have found no instance in which it has been applied in case of claims under soldiers'-exemption statutes. A distinction of this kind could well be made where the purpose of the exemption is similar to that of a bonus statute or one for civil-service preference.

The majority opinion cites Zearing v. Johnson, 10 Cal. 2d 654, 52 P. 2d 1019, which involved a statute providing a tax exemption to every resident "who has served in the army * * * in time of war," and has been honorably discharged. That decision is based largely on Bannister v. Soldiers' Bonus Board, 43 R. I. 346, 112 A. 422, 18 A. L. R. 589. There is no suggestion that it depended on a strict construction because a tax-exemption statute was involved.

The Bannister case was not a tax-exemption case. It involved a statute that used the words, "who was mustered into the federal service and reported for active duty." The Rhode Island court evidently made a distinction between being "inducted" and being "mustered."

I think the Hurley v. Crawley case should be followed here rather than the California and Rhode Island cases.

The majority opinion refers to the attorney general's opinion of February 2, 1922, and insists that the legislature is presumed to have known of it during all these years in which the law was never amended and clarified. This claim is based upon John Hancock Mut. L. Ins. Co. v. Lookingbill, 218 Iowa 373, 253 N. W. 604. That case cites numerous others to the proposition that courts give weight to constructions placed upon statutes by executive officers whose duty it is to enforce them, and argues that legislatures are presumed to know of such constructions. No case is cited which attempts to charge *legislatures* with constructive notice of attorney general's opinions. I doubt if the presumption goes that far. If weight is to be given to "constructions placed upon statutes by executive officers whose duty it is to enforce them,'" it might be well to ponder the fact that this plaintiff was allowed the exemption for over ten years by such officers.

The writer of the opinion in the John Hancock Insurance

Company case also wrote the opinion in In re Assessment of Simmons Warehouse Co., 229 Iowa 191, 294 N. W. 286. In the latter case this court construed section 7129.1, Code, 1939, *exactly contrary* to a construction that had been placed on it by an attorney general's opinion, and without any suggestion that the legislature had had opportunity to amend and clarify the statute if displeased with the construction by the attorney general, and *without even a reference* to the attorney general's opinion. The majority here well says, as to its argument on this ground: "We do not think it controlling." I think that a masterpiece of understatement.

It is conceded the appellee was subject to military law at the time of his discharge. I am impressed with the observation of the circuit court of appeals in the Hurley v. Crawley case, supra, at page 1012 of 50 F. 2d:

"Can the military authorities demand and obtain a wide and liberal construction of penal provisions, incidentally necessary to the execution of a great purpose, and, at the same time, a narrow and exclusive construction of remedial provisions created by Congress and the President in their mercy? We think not."

That statement could well be paraphrased here. This exemption law was a generous gesture by the State of Iowa toward men who had been in military service. No distinction was made between men who actually had been in battle and those who had just crossed the threshold to military service when the war ceased. Appellee's own government classified him as a "soldier." I think he was one within the intention of this statute.

I would affirm.