ARVILLE B. CASE, Appellee, v. FORREST M. OLSON, Commissioner of Public Safety, Appellee; MILTON V. GLISAR, Appellant; WALTER WRIGHT, Intervener, Appellee.

No. 46482.

JUNE 6, 1944.

Ray E. Rieke, of Sioux City, for defendant appellant.

Baron & Bolton and Frank Margolin, all of Sioux City, for plaintiff appellee.

V. O. DeWitt, of Sioux City, for defendant appellee.

Gill & Gill, of Sioux City, for intervener appellee.

HALE, J.—The civil-service commission of the city of Sioux City, on April 7, 1941, gave an examination for such policemen as sought promotion, to determine their qualifications for the office of captain of the police department. Arville B. Case, plaintiff herein, took the examination and was among those certified by the commission to be eligible. The eligibility list also contained the names of Walter Wright, intervener, and Milton V. Glisar, defendant. On August 6, 1941, Forrest M. Olson, Commissioner of Public Safety, appointed Glisar as police captain. Case appealed to the district court, naming Olson and Glisar as defendants. Wright intervened on the ground that he was an honorably discharged soldier and that the appointee, Glisar, was not.

The court held that plaintiff was not entitled to preference by reason of his service in and honorable discharge from a National Guard unit not drafted into federal service, nor by his induction by his draft board, nor his discharge from the draft, following Lamb v. Kroeger, 233 Iowa 730, 8 N. W. 2d 405, 149 A. L. R. 1475. The court further held that while the appointee, Glisar, was called by the draft board, he was rejected for physical disability and has no discharge from the Army of the United States or the draft. Wright, intervener, was a member of the Army of the United States from July 3, 1918, the date of his induction into military service, until March 15, 1919, at which time he was honorably discharged, and the court held that he was the only one of the candidates who was entitled to a preference. Defendant Glisar appeals from the findings, conclusions of law, and judgment and decree of the trial court. Plaintiff does not appeal.

This appeal, therefore, presents only one question. Is the intervener, Wright, within the requirements of section 5697 of

the Code of Iowa, 1939, and thereby entitled to a preference over the appellant, Glisar?

The statute, section 5697, Code of 1939, which, in the case of Zanfes v. Olson, 232 Iowa 1169, 7 N. W. 2d 901, was held to be controlling in regard to appointments made under the civil-service law in cities, reads as follows:

"Preferences. In all examinations and appointments under the provisions of this chapter, honorably discharged soldiers, sailors, or marines of the regular or volunteer army or navy of the United States shall be given the preference, if otherwise qualified. [34th G. A., chapter 54, section 2.] [SS15, §1056-a32; C24, 27, 31, 35, §5697.]"

This Code provision has been in force ever since its adoption as a part of the civil-service law in 1911, unchanged except that the word "chapter" has been substituted for the word "act" in the original enactment.

We are called on to decide whether the statute includes the soldiers in World War I who became such by reason of the draft. Appellant cites various provisions of the federal Code, none of which we think applies to the question in hand. The first reference defines the National Forces, and next defined are the Volunteer Forces. Appellant then calls attention to the Act of May 18, 1917 [40 Stat. at L. 76, chapter 15], when the selective-service law was adopted, which, as later amended [August 31, 1918], required all male persons between the ages of eighteen and forty-five to be subject to registration [40 Stat. at L. 955, chapter 166]. Reference is also made to the federal act of June 3, 1916 [39 Stat. at L. 166, chapter 134], which defines the Volunteer Army; and appellant urges that during the time intervener was in military service the law of the United States definitely classified military service into Regular Army, Volunteer Army, Officers' Reserve Corps, Enlisted Reserve Corps, National Guard, and Selective Service Army under said act. The Army at the outbreak of World War I was the Army of the United States.

We can see no reason why a subsequent change of words could affect the meaning of section 5697 at the time it was enacted. The question is one of construction of the statute and

the ordinary rules apply. Appellant argues that a law which is not ambiguous needs no construction. Such ambiguity as there may be here arises from a disagreement as to the meaning of the words "Regular or Volunteer Army." Our endeavor must be to ascertain the intent of the legislature at the time of the enactment of the Soldiers' Preference Law as a part of the civil-service statute. Appellant cites various rules of construction, all of which are commonly accepted. He cites and quotes 25 R. C. L., Statutes, 959, section 215, as follows:

"The true rule is that statutes are to be construed as they were intended to be understood when they were passed."

He urges that in the interpretation and construction of statutes the primary rule is to ascertain and give effect to the intent of the legislature when enacted, and that the intention and meaning of the legislature must be primarily determined from the language of the statute itself and not from conjectures aliunde. It is also argued that the statute should be read according to the natural and most obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending its operation.

There are many rules in construing laws, which are adopted to ascertain, if possible, the intent of the legislature in passing them. The courts confine themselves to the construction of the law as it is, not to amend or change under the guise of construction. Appellant states that we should endeavor to ascertain the intent of the legislature at the time the law was passed, and with this we agree. What was the purpose of the legislature as expressed in the statute? Where the language is of doubtful meaning, or where an adherence to the strict letter would lead to injustice, to absurdity, or to contradictory provisions, the duty of ascertaining the true meaning devolves upon the court. 59 C. J. 952, 957, section 569. If the intention of the legislature cannot be discovered, it is the duty of the court to give the statute a reasonable construction consistent with the general rules of law. It is also well established that when the language of a statute is ambiguous the court may look not only to the language but to the subject matter of the act, the object to be accomplished, or the purpose to be subserved, and the

law should be construed to give effect to the legislative purpose. See French v. French, 84 Iowa 655, 659, 51 N. W. 145, 15 L. R. A. 300; Sexton v. Sexton, 129 Iowa 487, 105 N. W. 314, 2 L. R. A., N. S., 708; State v. Sherman, 46 Iowa 415, 422; Seavert v. Cooper, 187 Iowa 1109, 1113, 175 N. W. 19.

The court should give effect to the spirit of the law rather than the letter, especially so where adherence to the letter would result in absurdity, or injustice, or would lead to contradiction, or would defeat the plain purpose of the act, or where the provision was inserted through inadvertence. 59 C. J. 964, 966, section 573.

A rule of construction is that in endeavoring to ascertain the intent of the act which is passed it should be given such construction as will not result in injustice, unreasonableness, or absurd consequences. Oliphant v. Hawkinson, 192 Iowa 1259, 1263, 183 N. W. 805, 33 A. L. R. 1433, citing and quoting from Uphoff v. Industrial Board, 271 Ill. 312, 111 N. E. 128, L. R. A. 1916E, 329, Ann. Cas. 1917D, 1.

Appellant further argues that the meaning of the words used in section 5697 is plain and understandable and it is presumed the lawmakers knew the meaning of the words they used. 25 R. C. L., Statutes, 964, section 219. Appellant contends the laws then in effect, both state and federal, gave the words "Regular or Volunteer Army" plain and definite meaning, and they did not include anyone forced into military service by compulsory draft. He insists that no enactment by the legislature of the state of Iowa, or the Congress of the United States, effective while intervener was in the military service of the United States, in any way changed the law or the meaning of the terms "Regular Army" or "Volunteer Army" from what they meant when they were embodied in the Iowa law in 1911.

We may accept appellant's statements of the law but we cannot hold that they support the result which he insists upon. At the time of the enactment of this preference law there were included in the Army the Regular Army and the Volunteer Army—the members of the Regular Army serving both in times of war and peace, and the Volunteer Army only during the existence of war or while war is imminent and only after congress

shall have authorized the President to raise such a force. In international law a Regular Army is comprised of soldiers properly organized as legitimate combatants engaged in war. These have been defined in a convention of the International Peace Conference at the Hague as follows: (a) commanded by a person responsible for his subordinates (b) to have a fixed distinctive emblem (c) to carry arms openly, and (d) to conduct their operations in conformance with the laws and customs of war. See, also, Webster's New International Dictionary, page 2099. So that, under international law, or as ordinarily understood, it might plausibly be argued that a soldier who served in World War I could be deemed a regular soldier, construing the statute liberally to effect its evident purpose, as we should. Lamb v. Kroeger, supra.

But we need not necessarily so construe the law in endeavoring to arrive at its intent. We do not need to go beyond the plain and ordinary use of the words in the statute itself. Where the meaning to be given a word in a statute will be determined from the character of its use, words now in use are to be given their natural, plain, ordinary, and commonly understood meaning in the absence of any statutory or well-established technical meaning unless it is plain in the statute that a different meaning was intended or unless such a construction would defeat the manifest intention of the legislature. 59 C. J. 974, section 577.

Among the many decisions of this court applying such rule are Des Moines City Ry. v. City of Des Moines, 205 Iowa 495, 216 N. W. 284, and cases cited; Hubel v. McAdon, 190 Iowa 677, 180 N. W. 994; Seavert v. Cooper, 187 Iowa 1109, 1113, 175 N. W. 19; Powers v. Harten, 183 Iowa 764, 767, 167 N. W. 693.

Further, section 63 (2), Code of 1939, relating to the Code and its construction, states:

"Words and phrases shall be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such meaning."

The definition of the words "Volunteer Army" in use by the War Department at the period of the enactment of the statute is persuasive. In the Digest of Opinions of the Judge Advocate General of the Army, 1912 (at which time General Crowder was the Judge Advocate General), which was published by order of the Secretary of War and certified by Leonard Wood, Major General, Chief of Staff, at page 1038 is given a definition of the term "Volunteer Army" as follows:

"The term 'Volunteer Army' (as comprehensively used) means that temporary military organization or body of men which the Government usually employs and maintains in the military service in time of war or other public danger. It is made up of (1) persons who voluntarily make their engagements directly with the United States to serve; (2) persons who are conscripted directly by the United States and forced to serve; (3) persons who voluntarily engage with a State to serve in a State militia organization, and are (together with that organization) called into the United States service as State militia by the President; (4) persons who are drafted by a State and forced into a State militia organization, and are (together with that organization) called into the United States service as State militia by the President. Those who make volunteer engagements directly with the United States to serve, and those who are conscripted directly by the United States and forced to serve, constitute organizations which (as well as the Regular Army) are called into existence by Congress under its constitutional power, 'to raise and support armies.'"

Then are defined various militia organizations, the membership in which is either voluntary or drafted, and all are considered "as belonging to that branch of the United States Army known as the Volunteer Army," citing various rulings of the department. Various other definitions having historical references follow, but none differs from the definition here given.

So that, applying the words "Volunteer Army" as then commonly accepted even by the military authorities themselves, it would be reasonable to assume that this was the sense in which the term was employed by the legislature—that is, soldiers

of the United States other than the Regular Army—and such has been the common construction and application of the statute.

The other preference law in Iowa, chapter 60, Code of 1939, beginning with section 1159, applying to positions not within the civil-service laws, designates the soldiers by the wars in which they were engaged. While the legislature at various times has felt called upon to extend the meaning of chapter 60 so as to include in it the members of the armed forces who were in other wars than that for which section 1159 was first enacted, there has never been any occasion, nor has the legislature seen fit, to extend the application of the general terms employed in section 5697. Whether or not this amounts to legislative construction, it does indicate that no legislature since the first enactment of this civil-service preference act has considered it necessary to enlarge or change the civil-service act in order to carry out its evident purpose.

The purpose of the law is evident. It was intended to do exactly what it states, to give preference in appointments to honorably discharged soldiers, and any construction thereof should be given that effect if it can be done without violence to the language employed. To say that the law embraces only regular soldiers—that is, those enlisted for a term of years to serve either in war or in peace in the United States Army, and only those of the great Army of the United States who served in World War I who belonged to volunteer organizations, when, in fact, in that war there were no volunteer organizations as such, and no distinction was made between those who offered their services and those who were inducted through the draft—would result in an absurdity in no way contemplated by the act itself. All military organizations were parts of the Army of the United States. To strictly construe the statute so as to eliminate the largest part of an army from the benefits secured to soldiers by the statute would contravene the very purpose of the law and could not have been within the intent of the legislature. The intent is manifest. That intent was to give to those making application for positions within the contemplation of the law some recognition of the service they had rendered by granting to them. if they had the prescribed qualifications, an advantage in selection. It is not to be conceived

that the legislature in its endeavor to grant such privilege intended to confine that privilege to only a fractional part of the armed forces and deprive the vast majority from any participation in the benefits provided by the statute.

It seems to us plain that any such construction as contended for by appellant would be far from the evident purpose of the legislature in enacting this preferential provision and we see no reason for adopting the strict construction for which he argues. We are satisfied the civil-service law as it now stands gives preference to the veteran United States soldier, in the general use of the word, including drafted soldiers, and that the intervener was entitled to the appointment.

The cause should be, and is, affirmed.—Affirmed.

All JUSTICES concur.