Boyd Dingman et al., for themselves and representing other
qualified electors of the City of Council Bluffs, Iowa,
appellees, v. City of Council Bluffs, appellant.

No. 49511.

(Reported in 90 N.W.2d 742)

1122

JUNE 3, 1958.

REHEARING DENIED JULY 24, 1958.

David E. Stuart, City Attorney, and John M. Peters, Assistant City Attorney, both of Council Bluffs, for appellant.

Richard C. Turner and DeVere Watson, both of Council Bluffs, for appellees.

LARSON, J.—The plaintiffs, for themselves and on behalf of other qualified electors of the City of Council Bluffs, sought a declaratory judgment to test the legality of certain proceedings of the city council respecting the issuance of general obligation bonds for the construction of storm sewers in an area in the city where no such facilities previously existed. Defendant does not question the propriety of this action, and the relevant facts are not in dispute.

On December 9, 1957, the city council by resolution ordered construction of a storm sewer system and pumping station in a limited area in the city, previously unimproved, proposing to pay for the improvement by issuing general obligation bonds. The area was not organized as a separate sewer district. On January 6, 1958, the plaintiffs and 871 other qualified electors, being more than a sufficient number to meet statutory requirements, filed a petition asking that the question of the issuance of the bonds to cover the costs of the construction be submitted to a vote of all the city electors. The council denied the petition on January 13, 1958, and this action followed.

The principal question both before the lower court and here is whether, in the face of the petition filed by the required number of voters under chapter 408A, Code, 1954, general obligation bonds for the proposed sewer construction of direct benefit to property in a limited area may be issued by the city council without first getting the approval of the electorate at a special election.

The pertinent provisions of the statute, chapter 408A, Code of Iowa, 1954, which became effective April 16, 1953, as chapter 195, Acts of the Fifty-fifth General Assembly, as an Act relating to the authorization and issuance of bonds by cities and towns, follow:

"Section 1. Any other statute notwithstanding, except where an election is required under some other statute, *before* any city or town shall institute *proceedings for the issuance* of bonds * * * the governing body thereof shall cause a notice * * * to be published * * *.

"Sec. 2. If at any time *before* the date fixed for taking action for the issuance of such bonds a petition is filed * * * asking that the question *of issuing such bonds* be submitted to the legal voters of the municipality, the governing body thereof shall either by resolution declare the proposal * * * to have been abandoned or shall call a special election to vote upon the question *of issuing the bonds.*" (Emphasis supplied.)

Section 3 pertains to the form of the question to be submitted, section 4 to the notice requirements, and section 5 to the requirement of a 60% majority. Section 6 authorizes the governing body to proceed with the issuance of bonds if no petition is filed pursuant to due notice.

Section 7, the meaning of which is the nub of this controversy, provides: "Nothing herein contained shall be construed to apply to *bonds issued* in connection with street improvements, bridges, viaducts, sewers or sewage treatment works *nor* to funding or refunding bonds *nor* to bonds *that have theretofore been authorized* or approved at an election required or provided to be held under any other law." (Emphasis supplied.)

Section 8 restricts these bonds to indebtedness payable by ad valorem taxes, and section 9 excludes special charter cities of 50,000 or more.

Generally speaking, this statute appears to place certain restrictions on the power of the municipality to issue general obligation bonds in excess of $25,000. Above that amount it must first give public notice of its intention to so do. If the requisite number of qualified electors object, the authority to proceed is terminated unless the action is approved by 60% of the electors at a special municipal election. Section 408A.7 appears as a pro-

viso or an exception to this restriction in the case of (1) bonds issued in connection with street improvements, sewers, etc., or to (2) funding or refunding bonds, or to (3) bonds that (a) have been authorized or (b) approved at an election required or provided to be held under any other law.

Plaintiffs' contention, that the proviso in section 408A.7 relating to bonds issued for sewers, etc. refers only to previously issued bonds, was upheld by the trial court and the city appealed. Apparently this was recognized by the court as the key issue. Indeed the trial court said: "If the words 'bonds issued' refer to or describe a past and future event or a future event only, then the defendant's position is right in the absence of other countervailing language in the statute."

Defendant, on the other hand, contends that the court, although acknowledging the rule, failed to give the words used in section 408A.7 their plain, obvious and rational meaning as determined from the character and use of the language in the whole statute, and failed to give the section an intelligent purpose; that it erred in its grammatical conclusion that a perfect participle indicates past time rather than completed action, and in attempting to apply a strict grammatical construction to a word taken out of context. Defendant contends such reasoning tends to defeat the obvious legislative intent, and that the error in considering an isolated word in a statute, without giving consideration to the construction, purpose and intent of the statute as a whole, calls for a reversal of the court's judgment. Defendant especially complains of the court's conclusion that "Ordinary rules of syntax and proper English usage are sufficient to resolve the problem." In this regard defendant contends the court has placed the cart before the horse, for generally speaking, the rules of syntax and proper English usage are properly resorted to as further aids in resolving the meaning of the legislation when, by considering the whole statute, the plain meaning and intent is not evident according to the usual, normal and proper understanding of the language used. Defendant complains that the court resorted to a narrow, technical, grammatical meaning of the word "issued" removed out of context, to establish a legislative intent far from that which is evident when the language used in the entire statute is given its plain,

obvious and rational meaning. We agree with these contentions.

I. In the absence of previous construction of this enactment the intent of the legislature must be determined both from the language used and the purpose of the legislation. We have long recognized the rule that where the language of a statute is plain and unambiguous and its meaning clear and unmistakable there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself. Long v. Northrup, 225 Iowa 132, 140, 279 N.W. 104, 109, 116 A. L. R. 1475; 50 Am. Jur., Statutes, sections 223 to 226 inclusive; Iowa-Illinois Gas & Elec. Co. v. Bettendorf, 241 Iowa 358, 362, 41 N.W.2d 1, and cases cited therein. Such is the case before us.

A statute is not to be read as though open to construction as a matter of course. Statutory construction may be properly involved only when the legislative Acts contain such ambiguities or obscurities that reasonable minds may disagree or be uncertain as to their meaning. Iowa-Illinois Gas & Elec. Co. v. Bettendorf, supra, and citations. If the language given its plain and rational meaning is precise and free from ambiguity, no more is necessary than to apply to the words used their natural and ordinary sense in connection with the subject considered. Case v. Olson, 234 Iowa 869, 873, 14 N.W.2d 717, and cases cited. We said in the case of In re Adoption of Alley, 234 Iowa 931, 934, 14 N.W.2d 742, 744: "We are not permitted to write into the statute words which are not there." Also see Eysink v. Board of Supervisors, 229 Iowa 1240, 296 N.W. 376.

Thus it would seem improper for the court to either read into section 408A.7, between the word "bonds" and the word "issued", the words "previously" or "to be", and we do not think it is necessary in this statute. Nevertheless, the controversy seems to resolve around the question of whether the legislature meant "bonds previously issued" or "bonds to be issued subsequently" in connection with street improvements, bridges, viaducts, sewers, etc., and we will consider those positions.

Taken by its four corners, this statute provides for public notice, for objections, and for a special election before general obligation bonds are issued, except in cases otherwise specifically provided, and except those issued for certain named improve-

ments and for refunding. Without a strained, narrow, technical or grammatical examination of the term "bonds issued", we find no ambiguity in this enactment. We think it means bonds issued pursuant to this legislation.

Support for this conclusion is found in the cases of Bowman v. City of Davenport, 243 Iowa 1135, 53 N.W.2d 249, and Hansen v. Henderson, 244 Iowa 650, 56 N.W.2d 59. In the Bowman case it is stated at page 1144 of 243 Iowa, page 254 of 53 N.W.2d: "All parts must be considered. It is fundamental in the construction of statutes that the ultimate object is to determine the real purpose and meaning."

The plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense which may be uncovered by the ingenuity and study of an acute and powerful intellect. Payne v. Ostrus, 50 F.2d 1039, 77 A.L.R. 531.

Again we said in Hansen v. Henderson, supra, at page 665 of 244 Iowa, page 67 of 56 N.W.2d: "It is the duty of the court, when possible to do so, to construe a legislative enactment so as to give intelligent purpose to its provisions."

The fair, reasonable, sensible, and rational interpretation of the language of chapter 408A, including 408A.7, and the intelligent purpose which can be fairly ascribed to its language are clear. We find no difficulty due to the words used throughout the statute in concluding that the bonds to be excluded from the provisions of the Act requiring an election were those necessary for the maintenance of critical functions of government for the benefit of the health and welfare of the entire community. If the legislature had simply wished to exclude bonds previously issued in these classifications, it could have said so. It knew how, as is disclosed by the third classification in section 408A.7. On the other hand, if this class of improvements was not to be subject to the restrictions of the previous sections, as clearly divisions 2 and 3 of section 408A.7 were not, it would be difficult to devise language that would appear more sensible. To say that the legislature should have said "bonds to be issued" would appear to require semantic experts as legislators or drafters of statute—a position we do not care to assume.

As pointed out in 82 C. J. S., Statutes, section 340,

page 682, while rules of grammar are often applied for the purpose of determining statutory meaning, "* * * such rules of grammar are not controlling when an intent in conflict therewith is disclosed, and must thereupon be disregarded so as to give effect to the legislative intention, as they cannot be allowed to defeat the legislative intent as expressed in the statute construed as a whole. * * * In other words, proper interpretation of a statute requires adherence to the plain common sense meaning of the language therein contained, rather than an application of refined and technical rules of grammatical construction." This rule we followed in Lahn v. Primghar, 225 Iowa 686, 281 N.W. 214; Lamb v. Kroeger, 233 Iowa 730, 8 N.W.2d 405; State ex rel. Winterfield v. Hardin County Rural Electric Cooperative, 226 Iowa 896, 285 N.W. 219; and Zilske v. Albers, 238 Iowa 1050, 29 N.W.2d 189.

II.    Of course the universal rule as to the object in statutory construction must be to discover the true intention of the legislature. We must apply to the words used in the statute and the section involved their natural and ordinary sense, considering the clearly-stated objects and purposes announced in the enactment as a whole.

While we do not think the meaning of this statute is doubtful or uncertain so as to require specific examination of the word "issued" in section 408A.7, due to the importance of this case we do consider the several issues raised and argued by counsel.

As heretofore stated, one of the canons for statutory interpretation is that a statute is not to be read as though open to construction as a matter of course. In the case of Palmer v. State Board of Assessment and Review, 226 Iowa 92, 95, 283 N.W. 415, 416, we said: "Statutory construction may be properly invoked only when the legislative acts contain such ambiguities or obscurities that reasonable minds may disagree or be uncertain as to their meaning." (Citing cases)  Also see 50 Am. Jur., Statutes, sections 223 to 226 inclusive.  Generally speaking, words of a statute are given their ordinary meaning, though we are well aware of the exception that words ought to be and are subservient to the legislative intent.

In the recent case of Ferguson v. Brick, 248 Iowa 839, 845, 82 N.W.2d 849, 852, we pointed out that any ambiguity that

might appear arose from a disagreement as to the scope of certain words, and that this disagreement should be settled by ascertaining the *intent* of the legislature at the time of the enactment of the statute. We said: "While generally speaking, words of a statute are given their ordinary meaning, words ought to be more subservient to the intent and not the intent to the words. [Citing cases] In ascertaining such intent consideration should be given to the Act as a whole and not to the ambiguous words alone, as if they were isolated and independent of the Act of which they are a part." (Citing cases)

Also see Iowa-Illinois Gas & Elec. Co. v. Bettendorf, supra, 241 Iowa 358, 362, 41 N.W.2d 1, 3; Zilske v. Albers, supra, 238 Iowa 1050, 1059, 29 N.W.2d 189, and authorities cited.

■ Obviously, then, we cannot determine the legislative intent by considering only the question of whether the isolated word "issued" relates to past, or past, present and future, or future issues. We must consider the entire statute and its other language and provisions.

Certainly as to procedure, the statute relates to the future. Section 408A.2 states: "If at any time *before the date fixed for taking action for the issuance of such bonds* a petition is filed * * * the governing body * * * *shall* either * * * *declare the proposal to issue* the bonds to have been abandoned or shall call a special election to vote upon the question *of issuing* the bonds." (Emphasis supplied.)

And in section 408A.1 it is said: "* * * *before any city or* town shall institute proceedings for the issuance of bonds * * * a notice of the *proposal, to issue such bonds*" shall be published. (Emphasis supplied.)

In other words, the legislature clearly had in mind that after the effective date of this Act bonds issued by the designated authorities had to be issued pursuant to the requirements set forth therein.

We think it is clear that the legislature, in enacting chapter 195, Acts of the 55th G. A., had one main purpose in mind. It was to provide a manner in which general obligation bonds could be issued by cities and towns, requiring electorate approval of council action in certain fields and authorizing it to act alone in others. This legislation was part of the recent over-all change

1130

in Iowa municipal law and reflects the expansion of local powers to meet and deal with problems of local government.

Unquestionably, substantive rights are also involved.

The general rule as set out in 82 C. J. S., Statutes, page 558, section 319, states: "Statutes framed in general terms ordinarily apply to cases and subjects within their terms subsequently arising, and, unless plainly indicating the contrary, are to be construed prospectively, especially where substantive rights are involved." Also see 59 C. J., page 1173, section 700, 82 C. J. S., Statutes, section 421. We referred to and applied this rule in Lever Brothers Co. v. Erbe, 249 Iowa 454, 466, 87 N.W.2d 469, 477, 478.

We have recognized this rule in In re Estate of Hall, 233 Iowa 1148, 1153, 11 N.W.2d 379, stating it is true that a statute will not be construed to be retroactive unless it is the intent of the legislature to make it so and such intent is clearly expressed. Also see Gaynor v. Magoun, 229 Iowa 134, 294 N.W. 256, and citations.

Manifestly, then, the provisions of chapter 408A must be viewed as prospective in substance and operation.

Perhaps the trial court's consideration of section 408A.7, first from a grammatical standpoint, led it to the erroneous conclusion that it was retrospective only due to the use of "issued" in the first part of the proviso. If so, such conclusion makes obvious the error one may commit by trying to resolve intent from an isolated word taken out of context. At most, its significance would only be a factor in the determination of legislative intent. It could not be considered conclusive in any event.

On the other hand, if the legislative intent was retrospective as to section 408A.7 and was as claimed by plaintiffs a saving or grandfather clause, why would the bonds of only street improvements, bridges, viaducts, sewers or sewer treatment works, be specified? What of bonds in connection with various other matters, such as parks, dumps, fire equipment, cemeteries, and others? It would indeed be unusual to find only certain bonds placed in a retrospective class, and many other bonds of a like class left out. If the section was intended as retrospective, the legislature could and, we think, would have

simply said, "This statute does not apply to bonds issued prior to its enactment." This it did not do. Its use of "bonds issued" in connection with specified operations must, therefore, have another and greater significance. These facts further strengthen the view that section 408A.7 is a prospective proviso or exception and applies in the future.

Thus we find no real ambiguity involved herein, and conclude it would be difficult indeed to find any other logical construction which would indicate a different legislative intent.

III. We feel it unnecessary to discuss the rules of grammar argued in this matter, for as heretofore indicated, unless the legislative intent is still not clear, after the language of the whole statute is considered, giving to the words used their normal, usual, reasonable and intelligent meaning, resort to the technical and refined rules of grammatical construction is not required. We do not reach that dilemma in this case and, therefore, must reject the plaintiffs' contention that it was necessary or helpful here, even though interestingly presented.

Plaintiffs contend the participle "issued" is in the past tense indicating the reference was to bonds previously issued, but, as pointed out by defendant's counsel, participles as such do not indicate the time when the event occurs. The time of the happening of the event is governed by the controlling verb of the clause in which the participle appears. See Webster's New International Dictionary, Second Ed., Copyright 1954. It is there stated: "These tense forms refer to the state of the action or occurrence as in progress or complete, rather than to its time of happening, which depends on the time expressed by the verb of the clause it occurs in * * *."

It must be concluded here that the word "issued" as such has no time significance, for when considered out of context, the tense cannot be determined. We can only determine the tense from reference to the other statutory provisions which, we think, refer to bonds to be subsequently issued. Our only conclusion here, then, is that the word "issue" and the word "issued" have many different meanings depending upon the subject matter of the writing or upon the context, or both. See 22A Words and Phrases, Issue, page 529. Furthermore, it is a fact that in no place, with the exception of the use of the ending "ed" on

"issued", is there the slightest indication that the section is retroactive.

IV. Section 408A.7 clearly was intended to be more than a saving clause. If it were intended only as a saving clause it would be a strange one indeed, for, as previously pointed out, we fail to see any reason for specific reference to certain important city functions and not as to other minor ones.

It is true the legislature could have been more specific by using the somewhat clumsy term "to be issued", but by the same token to be clearly restrictive, as contended for by plaintiffs, the use of the words "previously issued" would have been called for. It is also true that this section is in the nature of an exception to the general requirement of the chapter and must be strictly construed. Wood Brothers Thresher Co. v. Eicher, 231 Iowa 550, 562, 1 N.W.2d 655, but this does not mean that its terms should not be given their broad and usual meaning when so used without modifying additions. State v. Bauer, 236 Iowa 1020, 1022, 20 N.W.2d 431. When we consider the statute as a whole, it is our judgment that the legislature intended the term "bonds issued" to refer to bonds which will be issued subsequent to the enactment of this law.

We may make one further observation. Our conclusion does not have the effect of permitting the city authorities an unrestricted and free hand in establishing such public improvements, for resort to the state appeal board under chapter 23, Code, 1954, is still available to objectors.

V. We conclude that the plain meaning of the language, including the word "issued" as used in this statute, is that bonds issued pursuant to the power vested in the authority or council by the legislature shall be subject to voter approval, except as to street improvements, bridges, viaducts, sewers, etc., as set out in section 408A.7. The legislative intent being clear, no resort to rules of syntax was called for and the action of the trial court in denying the city council authority to proceed with the construction of the storm sewer and payment of the cost from the sale of general obligation bonds is reversed. —Reversed.

All JUSTICES concur except SMITH, J., not sitting.