CADY, Chief Justice
(dissenting).
I respectfully dissent from the decision by the majority.
Our legislature intended to regulate obscenity by regulating “obscene material,” and it sought to do so exclusively through express preemption. See Iowa Code § 728.11 (2009) (“In order to provide for the uniform application of the provisions of this chapter relating to obscene material applicable to minors within this state, it is intended that the sole and only regulation of obscene material shall be under the provisions of this chapter.... ”). To accomplish this regulation, the legislature enacted chapter 728 and defined both “obscene material” and “material.” See Iowa Code § 728.1(3), (5). We are ordinarily bound to follow legislative definitions. Inter-State Nurseries, Inc. v. Iowa Dep’t of Revenue, 164 N.W.2d 858, 861 (Iowa 1969). The legislative definition of “obscene material” relates to material that depicts or describes obscene matters, and the definition of “material” relates to the various mediums used to depict or describe obscene matter. See Iowa Code § 728.1(3), (5). These definitions express the scope of the regulation intended by the legislature, as well as the scope of preemption of local regulation.
The legislature defined the term “material” by listing five categories of material containing twenty-one or more specific items:
1. “[A]ny book, magazine, newspaper or other printed or written material”;
2. “[A]ny picture, drawing, photograph, motion picture, or other pictorial representation”;
3. “[A]ny statue or other figure”;
4. “[A]ny recording, transcription, or mechanical, chemical, or electrical reproduction”;
5. “[A]ny other articles, equipment, machines or materials.”
See id. § 728.1(3). The question of statutory interpretation in this ease is whether this definition includes the act of nude erotic dancing by a live performer. The majority concludes the legislature intended for nude dancing to be included within the meaning of the word “materials.” In other words, in the judgment of the majority, “materials” means a dancer to our legislature. This conclusion not only defies common sense, it defies our accepted rules of construction.
Two intrinsic aids are commonly used to find the legislative intent of statutes that define a particular concept by using a list of descriptive words. The first aid is the noscitur a sociis doctrine, which provides that the meaning of ambiguous words is determined by reference to their relationship with associated words and phrases. Peak v. Adams, 799 N.W.2d 535, 547-48 (Iowa 2011) (describing noscitur a sociis as a canon of construction that “ ‘summarizes the rule of both language and law that the meanings of particular words may be indicated or controlled by associated *202 words’ ” (quoting 11 Richard A. Lord, Wil-liston on Contracts § 32:6, at 432 (4th ed. 1999))). The coupling of words ordinarily denotes an intention that the words should be understood in the same general sense. 2A Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 47:16, at 353 (7th ed. 2007) [hereinafter Singer]. In other words, the meaning of a word is judged by the company the word keeps. State v. Merino, 81 Hawaii 198, 915 P.2d 672, 691 (1996). The doctrine was perhaps most colorfully explained by Lord Macmillan as “words of a feather flock together.” Hugh Pattison Macmillan, Rt. Hon. Lord, Law and Language, Presidential Address to the Holds-worth Club (May 15,1931).
The noscitur a sociis doctrine is accepted in the law to discern legislative intent because it reflects the accepted way people write and speak about a particular topic. Good communication is built by weaving a set of words together to create what linguists call semantic fields, words that share a common meaning and allow the topic to be understood as a connected text rather than a disconnected thought. Just as good writing seeks to eliminate unrelated words because they confuse the message, good interpretation seeks to construe ambiguous words as connected, not unrelated.
If, for the moment, the disputed word in this case — materials—is removed from the twenty-one-word list of section 728.1(3), all five categories and every descriptive word within each category describe various mediums that can be used to depict or display inanimate obscene pornography. The mediums listed have been used to create a multibillion-dollar commercial industry that distributes pornographic material worldwide. When the word “materials” is then added back into the definition in section 728.1(3), its meaning is logically derived from its associated words. Our legislature, like people in general, would not construct a list of twenty ways to distribute inanimate obscene material and then add a new topic of animate displays of obscenity to the definition by adding the word “materials” at the end of the list. Clearly, the application of the doctrine of associated words would exclude live performing arts from the definition of “material.” Under the noscitur a sociis doctrine, the word “materials” would mean any mediums used to display inanimate obscene pornography not specifically listed.
The second intrinsic aid, ejusdem gener-is, is a variation of the first and describes a common drafting technique that allows lawmakers to capture all of the intended applications of the statute. See 2A Singer § 47:17, at 357, 370-73. This doctrine attempts to reconcile the incompatibility between specific and general words so that all parts of a statute are construed together, and no words are rendered superfluous. Id. at 375-76. This maxim treats specific words as expressing a class or topic and a general word within the same group as a means of extending the statute to include everything within the class, though not specifically listed. Id. § 47:18, at 378. The doctrine is not just semantics and formal logic. Id. at 382. Instead,
[i]t rests on practical insights about everyday language usage. When people list a number of particulars and add a general reference like “and so forth,” they mean to include by use of the general reference not everything else but only others of the like kind.

Id.

Like the first doctrine, this maxim also reveals our legislature did not intend to include the act of dancing within the definition of material. The definition lists only inanimate mediums and concludes with a catchall category of “any other arti *203 cles, equipment, machines or materials.” See Iowa Code § 728.1(3) (emphasis added). The ejusdem generis doctrine reveals the legislature used the last category of more general words to expand the definition of material to include everything embraced within the class of medium capable of displaying or depicting inanimate, obscene pornography. Moreover, the words “articles,” “equipment,” and “machines” in the catchall category do not describe a new class of animate means of displaying pornography so that the meaning of “materials” could include nude dancing. Accordingly, like the first intrinsic aid, the doctrine of ejusdem generis does not support the conclusion of the majority. See Fleur de Lis Motor Inns, Inc. v. Bair, 301 N.W.2d 685, 690 (Iowa 1981) (indicating the doctrines of noscitur a sociis and ejus-dem generis normally produce identical results).
I acknowledge that neither of these intrinsic aids should be followed by courts when there is a clear, contrary legislative intent. Yet, there is nothing about the statute in question or any other rules of construction that manifest an intent to regulate the subject of obscenity in the live performing arts. The contrary conclusion by the majority is, in its best light, unpersuasive.
First, reasonable people would agree that our legislature could logically choose to regulate the distribution of inanimate obscene materials without also regulating obscenity in the live performing arts. The legislature could, of course, preempt both areas, but the two are not so compatible that a court interpreting a preemption statute could conclude it would be absurd to only preempt local regulation of inanimate obscene materials and not obscene live dancing. In fact, it makes perfect sense for our legislature to regulate the obscene pornography industry statewide but permit local government to participate in the regulation of live nude dancing in their communities. Live nude dancing raises problems quite different from traffic in inanimate obscene pornography. Additionally, it would make perfect sense for our legislature to regulate the distribution of obscene pornography to minors in the form of film shown by movie theaters and to leave it to local government to regulate access by minors to places that provide live adult entertainment. Contrary to the claim of the majority, such an approach would not mean our legislature would have intended to permit minors to view live obscene sex acts by excluding live dancing from the subject in the preemption. Preemption is a doctrine of legislative authority to exclusively regulate an area. It does not express a legislative intent to permit conduct that falls outside of the preempted area. For example, our legislature did not intend to countenance overtime parking in society by failing to include state provisions governing overtime parking within its laws governing the operation of motor vehicles.
Thus, for the majority to conclude it would be absurd for our legislature to have left nude dancing out of its preemption scheme is itself absurd. Additionally, the absurd-results doctrine followed by the majority must only be utilized sparingly due to the risk of displacing legislative policy with judicial policy based on speculation. Kolzow v. State, 813 N.W.2d 731, 739 (Iowa 2012) (“We use the absurd results doctrine sparingly because of the risk of displacing legislative policy.”); 2A Singer § 45:12, at 105-07. When there is no basis to claim an absurd result, there is no claim to use the doctrine.
Second, the list of items in section 728.1(3) may be fairly comprehensive, but hardly all inclusive, so as to render the meaning of the term “other ... material” as surplusage, as asserted by the majority. *204 Ordinarily, it is nearly impossible to spell out every condition in a statute, making it common for legislators to use general words in conjunction with specific enumer-ative. words to include additional contingencies. See 2A Singer § 47:17, at 370-73. The approach taken by the majority to declare the specific enumerated terms of the statute to be all inclusive undermines our law and logic. It is inconsistent with the accepted legislative drafting technique of using catchall phrases to capture the entire scope of the statute. Commonly, catchall phrases are used to allow a statute to maintain its relevancy in the face of our ever-changing society. For example, in this case, the catchall phrase in section 728.1(3) would allow the statute to not only capture all current mediums of the distribution of inanimate obscene material, but also new mediums that surely will be developed in the future as technology'continues to change.
Third, words in a statute are to be given their common meaning. Severs v. Abrahamson, 255 Iowa 979, 981, 124 N.W.2d 150,152 (1963). There is no legal principle that allows the secondary meaning of a word to change the topic of a statutory definition, especially when the secondary meaning has little, if any, connection to the new topic sought to be introduced. In this case, the word “materials” may have a secondary meaning relating to the repertoire of a performer, but the meaning of “repertoire” is itself a torturous way to express an intent to include live nude dancing. Nevertheless, the legislature would not use a word with a primary meaning consistent with the other associated words in a statutory definition to create a new topic in the definition derived from a secondary meaning of the word. In other provisions of chapter 728, the legislature expressly criminalizes public indecent exposure by persons. Iowa Code § 728.5. Yet, the preemption provision at issue is limited to obscene materials. See id. § 728.11. If the legislature intended to preempt local regulation of live acts, it would have said so in section 728.11.
Fourth, courts must attempt to construe statutes in a way that does not render them unconstitutional. 2A Singer § 45:11, at 80-81. This approach means courts are to interpret a statute in a way that supports its constitutionality when the statute is open to two reasonable constructions. See id. In this case, the word “materials” in section 728.1(3) is not open to two reasonable constructions in the context of the statute.
Fifth, it is of no value to string together cases from other jurisdictions where legislatures have specifically defined obscenity to include live performances. As previously indicated, it would be a reasonable approach for a state to regulate both inanimate obscene material and live nude dancing. Nevertheless, it would be just as reasonable to regulate obscenity using a combination of state and local government regulations. The question for us in this case is to determine the approach taken in Iowa, not the approach taken in other states. Any reference to a string of authorities from other states appears facially impressive, but is totally irrelevant.
Finally, in Dingman v. City of Council Bluffs, 249 Iowa 1121, 90 N.W.2d 742 (1958), we said the plain, obvious, and rational meaning of a statute is always preferred over any curious, narrow, hidden sense that is only uncovered by ingenuity and intellect. 249 Iowa at 1127, 90 N.W.2d at 746-47. The majority has failed to heed this admonition. Our legislature did not intend for the word “materials” to mean nude, erotic dancing. A square peg simply will not fit into a round hole.
Therefore, I would conclude state law did not preempt Hamburg’s ordinance. The Iowa legislature did not deprive local governments of the ability to regulate live nude dancing. Therefore, we should ad *205 dress the substantive issue of whether the restrictions imposed by the Hamburg ordinance violate our Iowa Constitution’s prohibition of laws abridging the freedom of speech. Because the majority does not address the issue, however, I will leave it for another day to express my views in this area and simply dissent from the decision made by the majority.